CENTRAL TRUST CO. OF N. Y. *et al. v.* WABASH, ST. L. & P. RY.
CO. *et al.*

*(Circuit Court, E. D. Missouri, E. D.*　November 13, 1888.)

**1. RAILROAD COMPANIES—BONDS AND MORTGAGES—FORECLOSURE—COSTS.**

An insolvent railroad corporation, the various divisions of whose road were incumbered by separate mortgages, and the whole by a junior general mortgage, filed a bill praying for the appointment of receivers of the whole of its property for the benefit of all parties concerned, and receivers were appointed. Subsequently the trustees in the general mortgage filed a bill to foreclose, and the same was consolidated with the first bill, and a sale took place under a decree foreclosing the general mortgage, subject to all the divisional senior mortgages. Certain trustees of divisional senior mortgages, who had been made parties defendant to the original bill, and had employed counsel to protect their interests, thereupon filed claims against the proceeds of sale, to be reimbursed for their own services and expenses for counsel fees pending the proceedings. On a reference to a master, said claims were allowed, and taxed as costs, but the claim of one trustee was disallowed on the ground that, pending the proceedings, it had filed a bill in another court to foreclose the divisional mortgage in which it was trustee, and had procured the appointment of other receivers for that division. *Held,* on exceptions to such ruling, that it was erroneous; that such trustee was entitled to reimbursement for services and expenses by it incurred as a party defendant to the original bill, up to the time its division was withdrawn and other receivers thereof were appointed.

**2. SAME.**

*Held, further,* that inasmuch as the general mortgage bondholders had consented to the allowance of similar claims in favor of other trustees in senior divisional mortgages, as recommended by the master, it had established the rule for the taxation of costs in the particular case, and that the court would not re-examine the question whether such allowances were proper.

On Exceptions to Master's Report on Claim of United States Trust Company and Edward W. and Theodore Sheldon.

The order of November 9, 1885, referred to in the opinion is as follows:

"Now, on this day come the Central Trust Company of New York, and James Cheney, by Butler, Stillman & Hubbard, and Phillips & Stewart, their solicitors, and the Mercantile Trust Company of New York, by H. S. Greene, its solicitor, and upon motion it is ordered that this cause be referred to Edmund T. Allen, as special master, to take and report, with all convenient speed, evidence and his conclusions on the following questions and matters: * * * (7) Said master will also report the probable amount of costs incurred in this cause in this court, and in all courts entertaining ancillary jurisdiction thereof; also the amount of reasonable compensation to be paid to said trustees, receivers, their solicitors and counsel, for services already rendered. * * * (11) Said master will also take evidence and report upon such other matters pertinent to the issues made herein as may be brought before him. It is ordered that said master take such portions of the evidence on said questions and matters as may be taken most conveniently in the city of New York or elsewhere, particularly when a number of witnesses reside in said city, or away from the city of St. Louis."

The master reported June 11, 1887, as follows, under the eleventh paragraph of said order of reference:

"A large amount of evidence was produced before me in respect of claims for services rendered in this litigation by trustees of the senior mortgages upon

the property of the Wabash Railway Company, by trustees of mortgages upon property leased by said railway company, and for services rendered such trustees by their respective solicitors; also in respect of claims for services rendered by solicitors who have appeared in this cause for lessor corporations, made defendants in the original and cross-bills, the property of which lessor corporations came into the possession of the receivers. The purchasing committee contest the right of the trustees of both classes above named, to be paid for their services, or to have their costs, as between solicitor and client, paid out of the fund; and contest the right of the lessor corporations to have their costs as between solicitor and client, taxed against the fund. It is contended by the purchasing committee that the trustees above referred to were not necessary parties to the cross-bills of the Central Trust Company of New York and James Cheney, trustees, under the general mortgage, nor to their bill for the foreclosure of the general mortgage, removed from the state court, and consolidated with the original cause, nor to the cross-bill of the Mercantile Trust Company, trustee under the collateral trust mortgage; that the interests of all the trustees of mortgages other than the general mortgage and collateral trust mortgage were correctly stated in the original bill of complaint of the Wabash Company, or in the amendment to its original bill, and in the several cross-bills above mentioned, and in the petition of the Central Trust Company of New York and James Cheney, removed from the state court; that no relief was sought by said defendants and cross-complainants against the interests represented by the trustees, whose claims for compensation and costs are now under consideration; that the decree entered in this cause recognized and protected all the interests represented by said trustees; that no necessity existed for any action on the part of said trustees in respect of this litigation, and hence no occasion arose for the employment of solicitors to represent them in the cause; that it has not been the practice of courts of chancery to make allowances to parties so related to the cause for compensation for services rendered, nor to tax their costs, as between solicitor and client, to be paid out of the proceeds of a sale insufficient to satisfy junior mortgagees who sought and secured the foreclosure of their mortgages; that in such cases the practice has been to add the taxable costs, particularly as between solicitor and client, to the securities of the senior mortgagees. These contentions of the purchasing committee are well sustained by the English and American cases. They seem to me, however, to overlook certain features of this litigation, which are, so far as my reading goes, exceptional, and which may well warrant exceptional treatment. Whatever it has since become, this suit was not, in its inception, a suit by a junior mortgagee to foreclose his mortgage, nor by junior mortgagees to foreclose their mortgages, without interfering with or trenching upon the rights of prior mortgagees. The original bill filed by an insolvent debtor corporation prayed, among other things, 'that your honors will cause all the liens upon said property, or any part thereof, and all rights, claims, and equities of all persons interested therein, to be ascertained, defined, and determined, and that the proceeds arising from the sale of such property, or any part thereof, be applied under the orders and decrees of this court, according to the rights, interests, and equities of parties or persons interested in said fund.' This was, then, at the commencement, a proceeding for the administration of the affairs of this insolvent complainant, and might have resulted in the sale of all its assets free from all the many incumbrances upon it, and an application of the proceeds of such sale, 'according to the rights, interests, and equities of parties or persons interested in said fund.' In such cases—that is, cases of administration of an estate—it was the practice of the English court of chancery to pay the costs of the proper and necessary parties in the first instance, and before the fund was administered. *Ford* v. *Earl of Chesterfield*, 21 Beav. 426.

"While the outcome of this litigation has been the foreclosure of the two junior mortgages, leaving unimpaired the rights and equities of senior mortgagees, the proceeding has never ceased to be what it was at its commencement, a suit for the administration of the estate of the Wabash Railway Company, an insolvent corporation. The receivers were appointed under the prayer of the original bill filed by the Wabash Company. A motion for their appointment under the cross-bill of the general mortgage trustees, and under the petition of those trustees removed from the state court, was denied. The original cause was consolidated with the removed cause, and the two causes culminated in a final decree, which was a decree in one cause as well as in the other. The consolidated cause partook of the characteristics of each of its constituent parts, and in determining the question under discussion, the character of the original bill should, in my judgment, be kept in mind. From the original bill the insolvent condition of the complainant corporation was clearly apparent. It averred that large sums of money were due to a multitude of laborers; that the corporation was indebted to the St. Louis, Iron Mountain & Southern Railway Company in the sum of $1,150,091.50 for advances; that the negotiable paper of the corporation, to the amount of over two millions of dollars, was outstanding, which paper was indorsed by certain parties, who held collateral trust bonds as security for their indorsements. The prayer was made that the court would make such orders as would enable the receivers to be appointed 'to protect the indorsers upon said promissory notes.' It averred that the complainant was indebted to a number of other railroad corporations on balances arising from exchange of business, and that, unless such indebtedness should be promptly paid, the earnings of the complainant's property would be greatly impaired. It averred that the floating debt of the corporation amounted in the aggregate to the sum of $4,784,145.01; but whether this large sum was inclusive of any or all of the amounts previously above stated, did not clearly appear. To any one at all familiar with the history of railroad receiverships during the last twenty years, such recitals as above stated foreboded a cloud of receivers' certificates. There would, in the nature of things, be no other method, ordinarily, of providing the means for paying off promptly labor claims, traffic balances, and other pressing preferential demands, and, at the same time, for keeping the property in repair, paying its current operating expenses, rentals, taxes, and interest on underlying mortgages. Indeed, on the 30th day of May, 1884, the day after the receivers were appointed, the complainant, by its petition, prayed for an order directing the receivers to protect by their obligations as receivers the promissory notes above mentioned, as they should severally mature, amounting in the aggregate to $2,300,-000. The case of *Miltenberger* v. *Railway Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140, had been decided at the October term, 1882. In that case Mr. Justice BLATCHFORD commented upon the want of equity in the objections of first mortgagees (who had been made parties to a bill of foreclosure by a second mortgagee) to the indebtedness incurred by the receiver, under the orders of the court, because they had been lying by and seeing the court and the receiver dealing with the property in the manner complained of, and contented 'themselves with merely protesting generally, and disclaiming all interest under the receivership.' 106 U. S. 308, 1 Sup. Ct. Rep. 159. After these comments of Judge BLATCHFORD, considering the averments of the original bill, and the petition of the complainant filed immediately after the appointment of the receivers, it does not seem to me reasonable to claim that no necessity existed for any action on the part of trustees of senior mortgages, nor occasion for the employment of solicitors to represent them in this cause. Again, the purchasing committee are inconsistent in contesting these claims. On the 22d day of September, 1886, General Swayne testified before me that the purchasing committee consented to the payment out of the fund to James R. Jessup, as one

of the trustees named in the mortgage of the Great Western Railway, and as trustee named in the mortgage to secure the consolidated sinking fund bonds of the Toledo, Wabash & Western Railroad, and as trustee named in the mortgage of the Illinois & Southern Iowa Railway, he having 'acted also as counsel for himself, and in one or more instances for his co-trustees,' the sum of three thousand dollars. By reason of this evidence of General Swayne I recommended an order making such allowance, which order was made, without objection from any one, on the 6th day of October, 1886, and the money paid by me accordingly from funds subject to my check as commissioner. These considerations induce me to recommend the allowances to trustees and their solicitors hereinafter stated. The foregoing allowances are all that I think should be made, on the evidence produced before me, to trustees named in mortgages upon property owned by the Wabash Railway Company, at the date of the receivership, and to their solicitors. Messrs. Edward W. and Theodore Sheldon made proof before me of services rendered as solicitors to the United States Trust Company, the trustee named in the Omaha Division mortgage. Inasmuch, however, as the United States Trust Company, on the 6th day of January, 1886, secured an order for the surrender to it of the property described in its said mortgage, and has since prosecuted the foreclosure of said mortgage in a separate proceeding, I am of the opinion that they and the trust company should be remitted to that proceeding for such allowances regarding their services as they may show themselves entitled to receive, from funds arising from such foreclosure.    EDMUND T. ALLEN, Special Master."

*Theodore Sheldon*, for intervenors.
*John W. Noble* and *Wells H. Blodgett*, for receivers.

THAYER, J. 1. The master, in his report filed June 11, 1887, bases his right to report upon the claims for compensation made by trustees under senior mortgages upon the eleventh paragraph of the order of November 9, 1885, and not upon the seventh paragraph. His right to investigate and report on claims of trustees in underlying mortgages under the eleventh paragraph of that order has been heretofore recognized by the court by making numerous allowances on such claims in accordance with the master's recommendation. I must accordingly overrule the point now made that the master had no authority under the order of reference to consider the claims of the United States Trust Company, and Messrs. E. W. and Theodore Sheldon, its solicitors. That question cannot be treated as now open for consideration. The master's power to report on those claims is derived from the eleventh paragraph of the order of November 9, 1885.

2. The question whether trustees under senior mortgages, and their solicitors, ought to be allowed compensation out of the funds realized from the foreclosure sale under the general mortgage, is a question which the master has examined at some length in his report. His conclusion is that, inasmuch as this proceeding was originally brought by an insolvent corporation to obtain administration of its affairs, and might have resulted in a sale of all of its assets free from all incumbrances, that all of the trustees in underlying mortgages who were made parties to the proceeding, rightfully employed counsel to guard their several interests, and are entitled to compensation out of the fund realized from the foreclosure sale. It is unnecessary to re-examine the master's conclusion on

v.36F.no.11—40

that point, at this stage of the case. With the consent of the purchasing committee, the court has already made numerous allowances to the trustees of underlying mortgages, and to their solicitors, in accordance with the master's views. That settles the rule for the taxation of costs, so far as the present case is concerned, and it should be applied to the claim preferred by the United States Trust Company, unless it differs essentially from claims in favor of other trustees that have heretofore been allowed.

3. I cannot regard the fact that the United States Trust Company began proceedings to foreclose its mortgage on the Omaha Division, and at a certain time withdrew that division of the road from the custody of the receivers appointed in this case, as of sufficient importance to distinguish its claim from those of other trustees in underlying mortgages whose claims have been recognized. It may be assumed that the trustees in all of the underlying mortgages were entitled to compensation out of the property covered by their respective mortgages, for all of the services by them rendered, or expenses incurred, while they were parties to this suit, in guarding their respective interests in the property then in the custody of the court. That being so, those trustees of underlying mortgages who did not begin foreclosure proceedings, or withdraw the property in which they were concerned from the court's custody, appear to me to have no greater right to have the expenses by them incurred in this proceeding taxed as a part of the costs of this suit, than a trustee who did at a certain time withdraw property in which he was concerned, and begin foreclosure proceedings against it. The distinction which the master made as against the United States Trust Company appears to me to be purely arbitrary. Such allowances as have heretofore been made in favor of trustees in underlying mortgages and their solicitors, can only be sustained on the ground that, having been made parties to a proceeding which might have resulted in a sale of all the property of the Wabash system free from all incumbrances, and having been forced to employ counsel to guard their several interests, they are entitled to reimbursement out of the fund realized in this case for the trouble and expense so incurred. The same reasons, in my opinion, necessitate an allowance to the United States Trust Company for all expenses by it incurred, at least up to the date of its withdrawal. If the allowance is right in one instance, it is in the other.

4. According to the view I have taken it is unnecessary to recommit the matter to the master. I have therefore examined the testimony before the master with respect to the amount of compensation that should be allowed the United States Trust Company and its solicitors, and I conclude that an allowance of $500 to the former and $1,500 to the latter will be adequate, considering the allowances that have already been made to other trustees and solicitors for similar services and expenses.

The fifth paragraph of the order made herein on April 14, 1888, (overruling the exception to the master's report, filed June 11, 1887, on the claim of the United States Trust Company and Messrs. E. W. and Theodore Sheldon) is rescinded, and claimants' exceptions, filed June 29, 1887,

are sustained, and an allowance is hereby made as above indicated of $500 to the United States Trust Company, and $1,500 to Messrs. E. W. and Theodore Sheldon.